### 76476. LOWE v. THE STATE.
(371 SE2d 238)

BIRDSONG, Chief Judge.

Laron Lowe, Jr. was convicted on two counts of armed robbery. His appeal asserts the general grounds, to wit, that the verdict is contrary to and without evidence; that it is against the weight of evidence; and that it is contrary to law and the principles of justice and equity. He also argues he was denied effective assistance of counsel. *Held*:

1. Appellant complains of misidentification, there having been

some varying accounts of what he wore during the two successive robberies of the same store and on the third occasion when he came to the store and was detained by the owner; and whether he had a beard or mustache.

The evidence showed that Eui Suk Lee and his wife, He Ok Lee, owners of a small neighborhood grocery store, were robbed at gunpoint by the same man on November 12, 1986, and again (with two others) on November 14, 1986. In December 1986, appellant entered the store and, being recognized as the robber, was immediately detained at gunpoint by the owner. On this occasion, appellant had no gun. This third time when appellant came into the store and was arrested, he wore a blue jacket with a red stripe identified by the Lees as having been worn by the robber. Mrs. Lee testified she had at all times been absolutely positive the appellant was the same man who robbed the store twice, and that she always carefully observed everyone who came into the store. The store was brightly lit and the victims got a good look at the robber. The robber stood at arm's length to Mrs. Lee during the second robbery and his face was not disguised; she clearly identified appellant as being that robber, and the same man who, with two others, had robbed her earlier. At the first robbery, the robber came "right up to [Mr. Lee's] face," and stood close enough to Mr. Lee to put the gun to his neck. The second time Mr. and Mrs. Lee were robbed, Mr. Lee had no doubt this was the same man who had robbed him two days before; he testified this was the same man who returned to the store 16 days later, wearing the same jacket; and he testified he had no doubt this was appellant Lowe. A witness who was in the store on November 12 was standing right at the cash register when the robber approached Mr. Lee and stuck the gun at his neck. This woman, in shock, thought the man had found the gun in the store and was playing a joke; and she actually told him "that he couldn't do it," and asked where he got the gun. In court she testified the appellant looked "pretty similar" to that robber. Her recollection of the details of the robber's face and dress was not acute.

Appellant's girl friend Pam Williams testified that appellant had been with her all day on November 12 and 14. On December 1, she drove him to the Lees' store and waited outside while he went in to get potato chips. She sat for 15 minutes and never saw him come out, but she saw other people arrive with guns; so she drove away and called appellant's grandmother and then returned to the store to inquire about appellant. She said the police questioned her about whom she was looking for, and she told them. However, the investigating officer testified that no one who identified herself as Pam Williams came into the store and made an inquiry. Ms. Williams testified, however, that although she had visited appellant often in jail, she never told the police that appellant had been with her on November 12 and

14.

Viewing the evidence in the light most favorable to the jury's verdict, as we are required to do on appeal, (*Jackson v. State*, 182 Ga. App. 826 (357 SE2d 143)), we find it is clear the jury believed beyond a reasonable doubt that Mr. Lee and Mrs. Lee correctly identified the appellant as the man who had robbed them twice. Credibility of an eyewitness, like any other issue of fact, is a matter for the jury. See *Lyons v. State*, 247 Ga. 465, 467 (277 SE2d 244); *Brooks v. State*, 182 Ga. App. 144, 145 (355 SE2d 435). The evidence authorized the jury rationally to conclude beyond a reasonable doubt that, having seen the robber twice two days apart at very close range in circumstances likely to encourage close observation, in a brightly-lit store, both Mr. and Mrs. Lee accurately identified the robber when he entered their store a third time wearing the same jacket. The verdict is thus sustained under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. The plea of ineffective assistance was specially heard by the trial court.

Appellant was initially represented by appointed counsel, who investigated the case and prepared for trial. On March 19, however, appellant's family retained private counsel (Atkins). Appellate counsel contends this private counsel's assistance was ineffective in part because between March 19 and April 8 (the day of trial), she spent only about three hours in preparation, including speaking to appellant for 30 minutes. During all this time, the trial court had instructed the appointed counsel from the public defender's office to remain in the case only because there was confusion as to who was appellant's counsel — the attorney hired by his family, of whom appellant himself seemed to be not much aware; or the public defender's office appointed by the court. The trial judge stated at the hearing that he did not do so to imply the private counsel was not competent. The public defender (appointed counsel) stated to appellant she was unable to "do anything further" because some alibi witnesses had been instructed, presumably by retained counsel, not to talk to appointed counsel.

Several days before trial, the trial judge learned that appointed counsel was ill, and he thus appointed another attorney to sit with retained counsel, and asked the first appointed attorney to advise the substitute of everything she knew about the case. This first counsel testified at the special hearing that she interviewed the witnesses, including the victims, and that a public defender's investigator investigated the case and that, having represented hundreds of criminal defendants, she had, in her judgment, advised appellant to plead guilty. Evidently this was when appellant's family hired private counsel. On March 19, three days after being retained, private counsel requested a

copy of the indictment and list of witnesses. It was never "crystal clear'" to appointed counsel that the trial judge wanted her to stay in the case, but she got the impression this was expected because the trial court wanted appellant to get a fair trial. Private counsel sent appointed counsel a copy of her request for indictment and witness list, but the two never conferred.

Private counsel testified she was a member in good standing of the State Bar of Georgia, had been a member of the Bar for 38 years; she estimated she had represented defendants in 3,000 criminal cases, in perhaps 1,500 jury trials. She testified she met with defendant the week before trial. She asked him "to give [her] everything that he possibly could"; he was cooperative and provided her with the names of defense or alibi witnesses. She testified that appellant told her of some persons he had apparently been intending to play cards with on the night he was arrested, but he did not give her their names and she did not call them as witnesses. She used other witnesses' investigative statements in cross-examining them, and conferred throughout trial with appointed counsel. She estimated her total preparation time was two and one-half to three hours. She moved for a continuance of the trial in view of the short period of time remaining before trial since she was retained, but the motion was denied. She did not interview State's witnesses because, she said, "It is just my practice [not to do so]. . . . I guess it is old fashioned, but I stick to it"; however, the record shows apparently she did have the victims' statements. She made no discovery motions, because she had only three weeks to prepare and was in court in other trials during that time. She testified her closing argument to the jury was simple, based on "the logics of the thing" as appellant had told her, which was that if he had been in the store earlier committing armed robbery, he would not have stopped there a few days later for a bag of potato chips, and that it was a case of mistaken identity. Further, she testified after her argument she asked (substitute) appointed counsel whether he could think of anything else to say. She also discussed with appellant his right to testify or not.

The first appointed counsel (who was not present at the criminal trial) testified on cross-examination to the effect that she understood the trial court had asked her to remain in the case because (she inferred) the private counsel was incompetent; and that she (appointed counsel) and an investigator were the only ones who really knew anything about the case, but she testified she never talked to private counsel. She agreed ("yes and no") that this was a relatively simple and straight-forward eyewitness identification case, but "there were some tough choices to be made in defense strategy [such as whether] to put alibi witnesses on, whether to put the defendant on, whether to put nothing on or one or the other."

The "substitute" appointed counsel, who sat in consultation at the trial, testified that he had defended literally hundreds of criminal cases and that the first appointed counsel was his assistant in the public defender's office; and although he knew very little of the case, he had the first appointed attorney's file when he sat in at the trial. He attempted to talk to the alibi witnesses in the hall and they refused to talk with him. This second appointed counsel testified that he was simply a substitute consultant and that if he had been asked to defend this case alone he would not have been ready to try it; but to this the trial court interjected that "if [the appointed attorney had] told me he wasn't prepared I wouldn't have put him on trial. . . . At no time did the district attorney's office ever approach me and suggest that the public defender sit on this case because they were concerned about ineffective assistance [of counsel]. The public defender sitting on the case was my idea . . . because there was confusion about who was representing [appellant]," and because the public defender's office had done a lot of investigation in the case.

The substitute appointed attorney (supervisor of the appointed attorney) identified certain written notes and testified that there had been two days of trial, and "[t]his would be my first day of trial notes which I made notes of [the private counsel's] representation of [appellant], what I felt was happening. . . ." He explained that he had begun to feel that private counsel was not fully prepared when she told him before trial it was not her custom to interview State's witnesses; he also testified, however, that private counsel did have copies of the incident report and the statements of the State witnesses contained therein.

He complained that the private counsel had, on voir dire, asked a juror embarrassing questions about the murder of the juror's stepson before accepting him; and had asked in the presence of the jury that appellant be allowed to go to the bathroom, which of course meant he had to be escorted by a deputy sheriff; that she failed to object to the argumentativeness of the DA's opening statement that witness's description (identification) of appellant would be "[e]tched in the mind of the witness forever"; and that her initial statement to the court that she would reserve her own opening statement and her subsequent change of mind "shows a lack of her knowledge of trial procedure, at least, or awareness . . . [and] confusion on her part as to basic trial tactics"; and he made other criticisms of her opening statement which cannot be studied since there is no record of the opening statements.

He also complained that "I have a note here [that] there was no general voir dire," but it does not appear he attempted to correct this problem during his own tenure as defense attorney and consultant. He conceded that her motion for continuance was denied. He said

there were several leading questions to which she did not object, and some hearsay questions "that were later cleared"; and complained of her failure to turn the storekeepers' statements as to loss of business after two robberies into a motive for identifying a person as the robber, and that he wrote in his own notes: "I really can't figure out her defense strategy. Either, Number one, rely on alibi, or, Number two, keep the jury ignorant"; and he explained how patiently and laboriously he had instructed her in detail about how to read the convenience store diagrams and how she should use them; further, that in his interpretation of a conversation he concluded she did not know whether an alibi witness could be impeached with a misdemeanor conviction. The substitute appointed counsel also allowed that he knew or thought beforehand that the defendant had not been prepared to take the stand, but did not specify how the private counsel's lack of such preparation had damaged appellant's defense or deprived him effective assistance. He alluded to some "misstatements" or erroneous inferences of fact, and her failure to object to some such misstatements or erroneous inferences (one of which was that the victim had detained appellant by use of a handgun, not a shotgun). The State pointed out: "[W]e are all hampered by not having the exact record here of some of this," and that if private counsel made a misstatement of fact, such as whether appellant's car had been impounded, it presumably had been told to her by the appellant. The appointed counsel conceded: "I know this: She must have gotten most of the facts right or you [the ADA] would have really hammered her more than you did in your final argument." He also conceded she did put up the defenses that he would have put up, and could not state that there were any exculpatory documents or evidence in the State's file which she did not obtain; she followed his advice about reserving charge objections and there were no jury charges defendant was entitled to that he did not get; but he thinks she "still to this date probably doesn't know why I asked her to observe [sic] objections until the time of motion for new trial."

In fact, none of this business discussed, except the denial of private counsel's motion for continuance based on lack of preparation time, is the subject of an alleged error in the trial below.

Appellant on appeal contends that "[private counsel's] lack of readiness must lead to a presumption that appellant was denied effective assistance of counsel," under *United States v. Cronic*, 466 U. S. 648 (104 SC 2039, 80 LE2d 657); *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674); and particularly under *House v. Balkcom*, 725 F2d 608 (11th Cir. 1984), where this same attorney and her partner had been found derelict in providing effective assistance of counsel. However, her "lack of readiness" in this case is not proven; beyond the appointed counsel's refrain that she was "not prepared,"

no specific instance of harm or prejudice is pointed out here, as it was in *House v. Balkcom*. She put up the proper defenses; no exonerating or exculpatory fact was omitted in appellant's defense. Appellate counsel has not alleged any error with respect to the jury charge. The relevant documents or evidence it was implied she did not obtain in fact did not exist, or were not essential to due process. We find that not one instance of clearly or indisputably harmful misfeasance or error occurred to deprive appellant of adequate representation by the private counsel Atkins. It was, in fact, a case of identification with one alibi witness and no fingerprints, blood, hair or bullets to test, no exculpatory evidence or defendant's statements to obtain through a discovery process. The public defender who sat in consultation with the private counsel was in fact consulted at every turn. The hearing transcript shows either he had no criticism to contribute, or he gave advice which she did not fail to follow; or that if he was unprepared, he himself failed to so advise the court.

In *Strickland v. Washington*, supra at 694, the Supreme Court held that a convicted defendant alleging ineffective assistance of counsel must show not only failure to provide reasonably effective assistance, but also that his errors were so serious as to deprive the defendant of a fair trial, by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

The appellant has not shown this counsel rendered ineffective assistance. He has not shown she committed errors so serious as to deprive the defendant of a fair trial, and cannot do so because he has shown nothing to suggest "a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." Id. Such would apparently be difficult to show in this case because the public defender who initially represented the appellant had, based on her own vast experience, urged him to plead guilty. Since the appointed counsel who sat at trial could find no defense left out, and no due process denied, and since he gave her counsel which evidently was accepted, the claim of ineffectiveness of counsel does not sit well. The facts of this case are nothing like those in *House v. Balkcom*, supra, and neither that case nor any other justifies general suspicions and allegations of incompetence of an attorney in another case.

3. The evidence given at the special hearing on ineffectiveness of counsel shows, too, that the trial court in its discretion did not err in denying private counsel's motion for continuance. It is clear the appellant had two attorneys; that even if private counsel had arguably not been ready for trial, the appointed counsel was ready to proceed because he failed to indicate otherwise, and he gave assistance and consultation to private counsel throughout the trial. The decision was

one for the trial court's discretion, and absent a showing of abuse of that discretion, we will not overturn it. *Cole v. Jordan*, 158 Ga. App. 200 (279 SE2d 497).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JUNE 29, 1988.

*Carl Greenberg*, for appellant.

*Robert E. Wilson*, District Attorney, *Helen A. Pryles, R. Stephen Roberts*, Assistant District Attorneys, for appellee.