## A04A1233. CALDWELL v. THE STATE.
(603 SE2d 506)

MILLER, Judge.

Robert Caldwell was convicted on two counts of aggravated child molestation. Thereafter, Caldwell filed an amended motion for new trial in which he claimed to have acquired newly discovered evidence. Caldwell offered the affidavits of two teenagers whom he claimed "did not reveal the information until after they learned of the defendant's conviction." After an evidentiary hearing where the new witnesses testified, the trial court denied the motion, specifically finding "the testimony to be incredible, that is, unworthy of any belief." In this appeal, Caldwell contends that the trial court erred in denying his amended motion for new trial. After review, having found no merit to his argument, we affirm.

When viewed in the light most favorable to the jury's verdict, the evidence established that at the time of the sexual abuse, the victim, her brother, their mother, their mother's boyfriend, and Robert Caldwell and his brother (the boyfriend's two adult sons) were all living together in the same household. Both stepbrothers were in their 20s. In June 2000, after the victim ran away from home, police and the Department of Family and Children Services took custody of her. The victim, then age eleven, described being sexually abused by her two stepbrothers and told a police officer that she was afraid to go home. The officer took her to meet with a youth and sex crimes detective.

That same day, June 4, 2000, this detective conducted a video-taped interview of the victim. On the videotape, the victim described acts of oral and anal sex and said that Caldwell put his penis in her "butt." She told the detective that it had hurt and made her mad. The detective testified that the victim told him that she was afraid to go home and that she was running away "because the two men had returned back from Chicago [and] she was afraid again because she felt the attacks were going to happen again."

The detective testified that when he contacted the victim's mother about the abuse, she "confirmed it" but justified not contacting police because her stepsons had already gone back to Chicago. The detective described the mother "as not very cooperative."

The victim, now twelve, testified that when she was ten or eleven, Caldwell had come into her bedroom and told her to pull her clothing down. When she refused, he pulled down her clothes himself. She testified that he told her to "suck his thing like a lollipop" and made her do that. She explained that by "thing" she meant his penis. She testified that on another occasion, he had pulled her pants off and "then put his thing in my butt," and that it had hurt. She testified that

this happened four or five different times, and that Caldwell told her not to tell anyone about it. She also testified that when she told her mother what Caldwell had done to her, her mother did not ask her any questions or call the police.

A pediatrician, an expert in child sexual abuse, examined the victim in mid-June 2000. The pediatrician testified that the victim talked about having been molested by her two older stepbrothers. Through the use of pictures, the victim described how Caldwell and his brother had put their penises in her mouth and in her "butt." According to this pediatrician, the girl said that the anal sex had "hurt."

The victim's younger brother testified that his sister told him that Caldwell and the other stepbrother "had been messing with her" and that "after a while I told my mom." The victim's mother admitted that at her son's instigation, she had questioned her daughter. She testified that her daughter told her that Caldwell and his brother "were making her have oral sex with them." She rationalized not contacting police "[b]ecause they were already out of the house [and] I figured I couldn't do anything about it. And she had her dates mixed up and stuff." The jury found Caldwell guilty of both of the indicted offenses.

At the motion hearing, as newly discovered evidence, Caldwell relied solely upon the testimony of K. A. and B. A., the two children of a witness who had testified for the defense at trial. The gist of their testimony was that in the summer of 1999, the victim had denied rumors about being raped by her stepbrothers. B. A., now age 13, testified that while playing baseball, he asked the victim and her brother about the rumors of sexual misconduct and she said, " '[n]o, my mama just wanted [the stepbrothers] out of the house because she didn't like them.' " B. A. testified that he shared this information with his sister and his parents that same day. B. A. also testified that his father knew this information and told defense counsel about it during the trial.[1]

K. A., age 17 at the time of the hearing, lacked any firsthand knowledge about the statements purportedly made to B. A., her younger brother. She testified that she had asked B. A. to ask the girl and her brother about the "little rumors going around the neighborhood with the local kids." K. A. claimed that B. A. had come back to report that "the only reason why [the victim and her brother] said that was because their mama didn't like [the stepbrothers]. That's

---

[1] Caldwell's trial counsel testified that no one had ever mentioned K. A. and B. A. as potential witnesses.

what he told me they said." K. A. also testified that Caldwell told her that he did not do it and that she absolutely believed him.

After listening to their testimony, the trial court commented: "I am so outraged by this, I can't believe it. That is the most blatant display of lying I have ever seen. And I have seen an awful lot. I've been a judge for 19 years. Those two kids got on the stand and, in my opinion, lied." The court added, "I have never seen more obvious lying . . . that's my evaluation." The court described them as "a couple of kids who think that the defendant is absolutely innocent and [came] up with a story that is just pure guff."

In a written order denying the motion for new trial, the court elaborated on why the testimony was not credible, noting, "[t]he witnesses' demeanor, their rote recitation of the date of the alleged conversation (over 4 years ago), their extremely close ties to defendant's family and their admitted bias towards the defendant are factors which undermine their credibility." While recognizing the legal distinction between evidence that merely impeaches and evidence which suggests fabrication by the victim, the trial court noted that it "cannot find itself blind to the obvious attempt to manufacture evidence to support a new trial." In denying the motion, the trial court determined that "the offered testimony is nothing more than an attempt to impeach the credibility of a material witness."

In this appeal, Caldwell's sole claim of error is that the trial court erred in denying his motion for new trial. He contends that he met all the requisite criteria for obtaining a new trial on the basis of newly discovered evidence, and that the trial court erred in finding otherwise.

The standard for granting a new trial on the basis of newly discovered evidence is well settled. *Moore v. State*, 268 Ga. 420, 422 (2) (489 SE2d 842) (1997). The party seeking a new trial on this ground must satisfy the trial court:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Citations and punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). To justify a new trial, all six requirements must be met. Id.

Caldwell contends that the testimony of the two new witnesses constituted substantive evidence that went beyond mere impeachment. Relying upon *Humphrey v. State*, 207 Ga. App. 472 (428 SE2d 362) (1993), he claims that the testimony and affidavits comprised new evidence that affirmatively supported his defense that the allegations of molestation were fabricated. Citing *Humphrey*, Caldwell also asserts that the trial court abused its discretion in determining the credibility of the two new witnesses that he offered.

"A new trial is not authorized where the only effect of the alleged newly discovered evidence would be to impeach the credibility of a witness. This is true even though the witness whose credibility would be impeached gave the only testimony on some vital point in the case." (Citations omitted.) *Weems v. State*, 268 Ga. 142, 143 (1) (485 SE2d 767) (1997). Thus, even were we to assume the absolute truth of the two witnesses' testimony, this so-called "newly discovered evidence" does nothing more than to impeach the credibility of a witness. Such a result would contravene *Timberlake*. See also *Moore*, supra, 268 Ga. at 422 (2).

Moreover, other evidence, including the victim's outcry to her brother, her statement to the responding officer, her videotaped interview, her statements to the detective, her mother's admitted response toward the report of abuse, and the victim's attempt to run away from home, all pointed toward Caldwell's guilt. Consequently, Caldwell cannot satisfy the requirement that the evidence be so material as to likely produce a different verdict. Compare *Bell v. State*, 227 Ga. 800, 806 (3) (183 SE2d 357) (1971) (denial of new trial reversed where newly discovered witness confessed to crime for which defendant was convicted). Since Caldwell did not fulfill all six criteria of *Timberlake*, his motion for new trial on the basis of newly discovered evidence necessarily fails. See *Timberlake*, supra, 246 Ga. at 491 (1). The trial court did not err in so deciding.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 11, 2004.

*Maria Murcier-Ashley*, for appellant.

*Jeffrey H. Brickman*, District Attorney, *Barbara B. Conroy*, Assistant District Attorney, for appellee.