## A07A0347. OJEMUYIWA v. THE STATE.
(647 SE2d 598)

MIKELL, Judge.

After a jury trial, Olumayowa Ojemuyiwa was convicted of felony obstruction of an officer, misdemeanor obstruction of an officer, and driving under the influence of alcohol to the extent that she was less safe. On appeal, Ojemuyiwa challenges the sufficiency of the evidence and the effectiveness of her trial counsel. She also maintains that the trial court erred by prohibiting her testimony as to her state of mind, by denying her motion for directed verdict on the DUI charge, and by failing to grant a new trial to allow the testimony of a newly discovered witness. We reverse the conviction on the DUI charge and affirm the remaining convictions.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict.[1] We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia.*[2] "The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3] Viewed in the light most favorable to the verdict, the evidence shows that in the early morning hours on July 10, 2005, Ojemuyiwa received a call from a corrections facility in Cobb County and was told that her sister had been taken to jail for driving under the influence and that someone needed to pick up her sister's car so that it would not be towed. Officer Matt Owen of the Cobb County Police Department testified that he assisted in the sister's DUI stop and that when he arrived at the scene, he parked his patrol car directly behind Ojemuyiwa's sister's car in the center turn lane on the street. Ojemuyiwa's sister already had been placed in custody.

Owen testified that when Ojemuyiwa arrived, she walked across the street and began to question him about her sister as soon as he stepped out of his vehicle; that when Ojemuyiwa was within three feet of him, he smelled a strong odor of alcohol emanating from her breath; and that he asked Ojemuyiwa if she had driven to the scene and if she had been drinking, and she gave a positive response to both questions. Owen recalled that while they talked, Ojemuyiwa was standing one foot inside of a lane of traffic and that when the light turned green at the nearby traffic signal and cars proceeded toward them, he asked Ojemuyiwa to step out of the roadway. Ojemuyiwa

---

[1] *Shabazz v. State*, 229 Ga. App. 465 (1) (494 SE2d 257) (1997).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Citation and punctuation omitted.) *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998).

ignored him so he asked her to move again, and when she did not comply, he placed his hand on her back and guided her out of the roadway, at which point she said, "Don't touch me." Owen testified that Ojemuyiwa then exhibited increasingly disorderly conduct by raising her voice and flailing her arms. Owen walked back to his vehicle to get his alco-sensor, and as he approached Ojemuyiwa with it, she backed away from him into a lane of traffic. Again, Owen asked her to move and when she did not respond, he held her arm above the elbow to pull her out of the lane of travel.

Owen asked Ojemuyiwa to step into a nearby parking lot and as they walked, she was yelling racist remarks at him and accusing him of trying to arrest her for DUI. Ojemuyiwa continued to yell at Owen, becoming increasingly hostile, then announced that she was leaving, at which point Owen told her that she could not leave because she was under investigation. After Ojemuyiwa ignored his commands to stop, Owen physically attempted to stop her from walking away, and she swung at him with her keys sticking out of her fists and scratched him on the eyebrow. Owen then grabbed Ojemuyiwa, who attempted to kick him in the groin, contacting his hip and upper thigh, forced her against a car to keep her at arm's length, and called dispatch to report that he was engaged in a physical confrontation. After he made the call, Ojemuyiwa's brother arrived. Owen instructed him to stay back, while holding Ojemuyiwa over the hood of a car with one hand and placing the other on his gun. Ojemuyiwa turned and kicked Owen in the stomach. According to Owen, Ojemuyiwa's brother repeatedly told her to stop resisting and when she did not, he told Owen to arrest her.

Sergeant Donald Zell arrived and helped Owen place Ojemuyiwa in handcuffs. Ojemuyiwa continued to resist arrest and called Owen names while he took her to his patrol car. As he tried to put her in the car, Ojemuyiwa continued to try to head butt and kick Owen, forcing him to restrain her on the hood of another vehicle to calm her down. Owen maintained that he did not ever strike Ojemuyiwa and that when she was asked at the jail if she were injured, she said that she was not.

Zell testified that when he arrived, Owen had Ojemuyiwa pinned against a car, and she was flailing around and ignoring his commands; that he had to force Ojemuyiwa's hands behind her back so that she could be handcuffed; that he smelled a strong odor of alcohol on her; that she was verbally assaultive; that neither he nor Owen hit Ojemuyiwa; that she lay down in the back of the patrol car and kicked the window with her feet; that Ojemuyiwa's brother tried to get her to calm down; and that Ojemuyiwa did not have any injuries when she was placed into the patrol car.

Ojemuyiwa testified that she had not been drinking that night and denied telling Owen that she had been; that Owen startled her by grabbing her as she walked away to get her identification from her car so she asked him not to grab her; that Owen did not approach her with the alco-sensor and ask her to blow into it; that she did not strike Owen; that he caused the cut on his eyebrow when he grabbed her arm; that she never made racist comments or threatening motions toward the officers; and that she was scared so she cried and screamed as the officers attacked her. Ojemuyiwa further testified that she bonded out of jail after eight hours and went to her mother's house before going to the hospital; that she sustained bruises on her arms and thigh and a swollen nose; and that she reported her injuries while she was being processed at the jail.

On cross-examination, Ojemuyiwa testified that she had documentation of her injuries but had not brought the documents to trial and that her mother took pictures of her injuries and her friends took pictures of the dents in her car, caused by the officers slamming her onto the hood. Ojemuyiwa's mother testified that she photographed Ojemuyiwa's injuries, which were not present before this incident, and that there were four dents in the hood of Ojemuyiwa's car after the incident that were not there the day before.

Ojemuyiwa's brother testified that when he arrived at the scene, Ojemuyiwa was slumped over a car and appeared upset; that he left the scene to pick up his mother, who lived half a block away; that he thought his sister was okay when he left the scene; that she was not in a position to kick anyone; and that when he saw Ojemuyiwa the next day, she looked swollen. He denied that he ever told his sister to stop resisting arrest.

1. Ojemuyiwa argues that the trial court erred when it refused to allow her to testify as to her state of mind during the time she was accused of struggling with the officers. Specifically, Ojemuyiwa sought to testify about a prior act of sexual violence committed against her to explain why she resisted Owen when he initially made contact with her in the street. Ojemuyiwa maintains that this testimony should have been admitted so that the jury could evaluate her state of mind to determine whether she acted with criminal intent and because it proved her sole defense of justification. We find no error.

At the outset we note that the accusation filed against Ojemuyiwa alleged that she obstructed the officer "by offering and doing violence to said officer by striking and kicking said officer." The testimony that Ojemuyiwa sought to introduce did not support the affirmative defense of justification. "[W]ith a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the

intent."[4] In other words, as a general rule, in order to assert the defense of justification, the defendant must admit the crime.[5] Ojemuyiwa testified that she did not strike or kick Owen or otherwise resist arrest, but was attacked by the officers. Because Ojemuyiwa did not admit to the crimes charged, the defense of justification was inapplicable.

2. Ojemuyiwa next argues that the trial court should have directed a verdict of acquittal on the driving under the influence charge. We agree.

> The probable cause needed to conduct an arrest for DUI requires that the officer have knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely. Mere presence of alcohol is not the issue. In a less safe case, the state must prove that the defendant had impaired driving ability as a result of drinking alcohol.[6]

In this case, Owen testified that he smelled a strong odor of alcohol emanating from Ojemuyiwa's breath, and Zell testified that he observed a strong odor of alcohol about her person. No sobriety tests were conducted. "[I]t has been repeatedly held by this Court that the presence or odor of alcohol on a driver's breath does not, by itself, support an inference that the driver was impaired."[7] There was no evidence offered to prove that Ojemuyiwa's driving ability was impaired due to alcohol consumption. In fact, there was no evidence presented whatsoever as to Ojemuyiwa's manner of driving, that her speech was slurred, her gait unsteady, or her eyes red and glassy, only that she became increasingly belligerent as she talked with the officers about her sister's arrest. Accordingly, we must reverse Ojemuyiwa's conviction for driving under the influence to the extent that it was less safe to drive.[8]

---

[4] *Green v. State*, 240 Ga. App. 774, 776 (1) (525 SE2d 154) (1999).

[5] See *McPetrie v. State*, 263 Ga. App. 85, 88 (2) (587 SE2d 233) (2003).

[6] (Punctuation and footnotes omitted.) *State v. Sanders*, 274 Ga. App. 393, 396 (617 SE2d 633) (2005).

[7] *Slayton v. State*, 281 Ga. App. 650, 652 (1) (637 SE2d 67) (2006), citing as examples, *State v. Gray*, 267 Ga. App. 753, 755 (2) (600 SE2d 626) (2004), and *State v. Batty*, 259 Ga. App. 431, 432 (577 SE2d 98) (2003). See also *Shaheed v. State*, 270 Ga. App. 709, 710 (1) (607 SE2d 897) (2004) (" 'Because individual responses to alcohol vary, the presence of alcohol in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver' ") (footnote and emphasis omitted).

[8] See *Shaheed*, supra (conviction reversed where there was no evidence that the defendant's driving was impaired as a result of his ingesting alcohol). See also *Allen v. State*, 257 Ga.

3. Ojemuyiwa contends that the trial court erred when it failed to grant a new trial to permit the testimony of a newly discovered witness. Motions for new trial on the ground of newly discovered evidence "are addressed to the sound discretion of the trial judge, and a refusal to grant the motion will not be reversed unless that discretion is abused."[9] We find no such abuse here.

The party seeking a new trial on this ground must satisfy the trial court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. To justify a new trial, all six requirements must be met.[10]

At the hearing on the motion for new trial, the new witness, Edward Stafford, testified that he observed the incident from a nearby gas station; that he heard Ojemuyiwa's brother yelling "stop resisting"; that Ojemuyiwa was resisting but was not aggressive; that he did not see Ojemuyiwa strike or kick any of the officers; and that he told Ojemuyiwa's brother that he witnessed the incident 24 hours after it happened. Stafford's testimony was cumulative of the officer's testimony regarding the extent of Ojemuyiwa's brother's participation and the fact that Ojemuyiwa resisted arrest. Additionally, Ojemuyiwa cannot satisfy the element that the evidence was so material that it would probably produce a different verdict. Therefore, we cannot find that the trial court abused its discretion when it denied Ojemuyiwa's motion for new trial on the ground of newly discovered evidence.

4. In her fifth enumerated error, Ojemuyiwa maintains that as a matter of law, Count 2 (misdemeanor obstruction) should have been merged with Count 1 (felony obstruction). We disagree.

---

App. 246, 247 (1) (570 SE2d 683) (2002) (conviction reversed where there was no testimony as to the defendant's manner of driving and alco-sensor results only indicated the presence of alcohol in the defendant's body).

[9] (Citation omitted.) *Seritt v. State*, 237 Ga. App. 665, 666 (2) (516 SE2d 366) (1999).

[10] *Caldwell v. State*, 269 Ga. App. 84, 86 (603 SE2d 506) (2004), citing *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). See *Claritt v. State*, 280 Ga. App. 384, 386 (3) (634 SE2d 81) (2006).

Ojemuyiwa was convicted of one count of felony obstruction related to the conduct she exhibited against Owen and one count of misdemeanor obstruction based on her conduct against Zell. The former requires "offering or doing violence to the person of" a law enforcement officer,[11] while the latter "is defined as knowingly and willfully obstructing or hindering any law enforcement officer in the lawful discharge of his official duties."[12] In connection with Count 1, Ojemuyiwa was accused of striking and kicking Officer Owen, and Count 2 charged that she refused to comply with Sergeant Zell's commands. The evidence established that Ojemuyiwa kicked and struck Owen, then later refused to comply with Zell's command to put her hands behind her back to be handcuffed. Accordingly, "[Ojemuyiwa's] actions against each individual law enforcement officer constituted separate crimes and do not merge in fact or law."[13]

5. Ojemuyiwa claims that her trial counsel was ineffective because he did not prepare for trial, interview or subpoena witnesses, provide photographic evidence, request a continuance, or request jury charges on misdemeanor obstruction as a lesser included offense and on lawful resistance to arrest. Other than citing cases that outline the standard to be applied to ineffective assistance of counsel cases, Ojemuyiwa cites no authority in support of each ground of her ineffectiveness claim. Instead, she claims that the cumulative effect of counsel's errors renders his assistance ineffective. We have held, however, that "each error must stand or fall on its own merits, and is not aided or aggravated by the accumulative effect of other claims of error."[14]

> To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies.[15]

In meeting this burden, "the defendant must overcome the strong

---

[11] OCGA § 16-10-24 (b).

[12] (Punctuation omitted.) *Denny v. State*, 222 Ga. App. 674, 675 (1) (475 SE2d 698) (1996), citing OCGA § 16-10-24 (a).

[13] Id. at 676 (1). See generally *Phillips v. State*, 162 Ga. App. 199, 200 (2) (290 SE2d 142) (1982) ("one who, by a single act, injures more than one person may be charged with multiple offenses") (citations omitted).

[14] (Citation and punctuation omitted.) *Ellis v. State*, 282 Ga. App. 17, 20 (2) (637 SE2d 729) (2006).

[15] *Hardegree v. State*, 230 Ga. App. 111, 113 (4) (495 SE2d 347) (1998), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

presumption that trial counsel's conduct falls within the wide range of reasonable professional conduct."[16] Courts considering ineffectiveness claims are "not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one."[17] "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[18] Bearing these principles in mind, we find no merit to Ojemuyiwa's claim.

(a) Ojemuyiwa argues that trial counsel was not prepared for trial because he did not have an opportunity to interview or subpoena witnesses, and therefore, should have requested a continuance. Ojemuyiwa's trial counsel testified that he received the state's discovery in the case during the weekend before the case was called to trial; that he did not request a continuance because he did not believe the case would be reached and thought that his announcement that he was not ready to proceed would sufficiently postpone the trial; that he talked with Ojemuyiwa the day before the trial but did not meet with her in person to prepare; that he did not respond to reciprocal discovery requests, thus was precluded from introducing documentary evidence; and that he did not make a proffer as to what the documentary evidence would have shown. Even if we assume that trial counsel's performance was deficient in these respects, Ojemuyiwa had not shown how but for his deficiency, the outcome of the trial would have been different.[19]

The documentary evidence included pictures of Ojemuyiwa's bruises and her vehicle, her medical bills and a cell phone record evidencing the phone call she made to her brother during the incident. There was testimony in the record as to each of these items, which the jury obviously chose to disbelieve. Additionally, Ojemuyiwa has not shown how any witness's testimony would have changed had trial counsel interviewed the witness, such that it would have affected the outcome of the trial. Ojemuyiwa argues that had trial counsel interviewed her brother, he would have learned about Stafford earlier and could have subpoenaed him. But Stafford's testimony

---

[16] (Citation and punctuation omitted.) *Mendoza v. State*, 274 Ga. App. 662, 664 (3) (618 SE2d 712) (2005).

[17] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

[18] (Citation and punctuation omitted.) *Carey v. State*, 281 Ga. App. 816, 818 (2) (637 SE2d 757) (2006).

[19] See *Lowe v. State*, 187 Ga. App. 678, 681-684 (2) (371 SE2d 238) (1988) (in a case requiring more difficult strategic decisions, trial counsel who announced that she was not ready to proceed did not provide ineffective assistance where defendant did not point out a specific instance of harm or prejudice).

contradicted the testimony of Ojemuyiwa's brother that he did not tell her to stop resisting; thus it is unlikely that it would have changed the outcome of the trial. Because an insufficient showing on one of the ineffectiveness components is fatal to the claim,[20] Ojemuyiwa's claims fail.

(b) "[W]here the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims not raised at that time are waived."[21] Ojemuyiwa's argument that trial counsel should have requested a jury charge on resisting an unlawful arrest was not raised below. Therefore, it cannot be considered on appeal. To the extent that Ojemuyiwa's argument is that trial counsel should have requested a charge on justification, as we discussed in Division 1, that affirmative defense is not applicable here. Trial counsel cannot be found to have rendered ineffective assistance for failing to request an inapplicable jury charge.

Regarding the jury charge on the lesser included offense of misdemeanor obstruction, counsel testified that based on conversations with Ojemuyiwa during plea negotiations during which she rejected the offer of probation, he did not think it was wise to offer the jury a lesser alternative upon which to convict Ojemuyiwa. "Counsel's decision not to request a jury charge on a lesser included offense and to pursue an 'all or nothing' defense is a matter of trial strategy and does not amount to ineffective assistance."[22]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 31, 2007.

*John R. Greco*, for appellant.
*Patrick H. Head, District Attorney, Erman J. Tanjuatco, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[20] *Green*, supra, at 652-653 (3).
[21] (Citations and punctuation omitted.) *Ellis*, supra.
[22] (Footnote omitted.) *Benefield v. State*, 253 Ga. App. 14, 15 (3) (a) (557 SE2d 476) (2001).
[1] OCGA § 40-6-391 (a) (1).