A10A1327. CALLAWAY v. THE STATE.
(696 SE2d 450)

BLACKBURN, Judge.

Following a jury trial, Charles E. Callaway was convicted of possession of methamphetamine with intent to distribute[1] and failure to maintain his vehicle in a single lane.[2] He appeals his conviction and the denial of his motion for new trial, arguing that he was entitled to a new trial because of newly discovered evidence. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, *Davis v. State*,[3] the evidence shows that shortly after midnight on August 6, 2005, two sheriff's deputies, driving in separate patrol vehicles, saw a pickup truck weave across the centerline of the road and then make an abrupt lane change. Consequently, the deputies turned on their vehicles' blue lights and initiated a traffic stop. After the pickup truck had come to a stop, Callaway, who had been driving the vehicle, exited and began talking to one of the deputies. At that time, the other deputy approached the passenger side of Callaway's truck and began talking to the passenger, Gwendolyn Whitehead, who had rolled down the vehicle's window. While asking Whitehead a few questions, the deputy noticed a black bag that had been partially duct-taped on the passenger side floorboard just underneath Whitehead's legs. When Whitehead denied any knowledge about the bag, the deputy became suspicious and walked back toward the patrol vehicles to inform the other deputy about what he had seen.

As the deputies talked, Callaway walked back toward the passenger side of his truck to get his insurance information from the vehicle's glove compartment. Without the deputies noticing, Whitehead handed Callaway the black duct-taped bag, and Callaway dropped it to the ground and kicked it under the truck. A few moments later, the deputies asked Callaway if they could search the vehicle, and he agreed. In the course of their search, the deputies found a small black bag in the truck's glove compartment, which

---

[1] OCGA § 16-13-30 (b).
[2] OCGA § 40-6-48 (1).
[3] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

contained several plastic bags of methamphetamine. Initially, however, the deputies could not find the larger black duct-taped bag that the deputy had noticed while talking to Whitehead. After searching the truck, one of the deputies walked away from the vehicle so that he could shine his flashlight underneath it. Upon doing so, he saw the larger bag underneath the truck and informed the other deputy of his discovery. In searching that bag, the deputies found a penknife, a measuring cup, digital scales, and several more plastic bags, which contained methamphetamine. The deputies arrested both Callaway and Whitehead and, in searching Whitehead's pockets, found more methamphetamine.

Callaway and Whitehead were jointly charged by accusation with one count of possession of methamphetamine with intent to distribute, and, in the same accusation, Callaway was also charged with one count of failure to maintain his vehicle in a single lane. Prior to trial, Whitehead agreed to testify against Callaway, and therefore the State successfully moved to sever the two defendants. At trial, the two deputies testified as to their traffic stop, their search of Callaway's truck, and their discovery of the two bags containing methamphetamine. Whitehead testified that the larger bag containing methamphetamine belonged to Callaway and also testified regarding Callaway's attempt to hide the bag underneath his truck. She further testified that on several occasions during the time that she was incarcerated and awaiting trial, Callaway, who initially had been released on bond after his arrest, would visit her and would put money into her inmate account. Additionally, Whitehead testified that she agreed to testify against Callaway with the hope that she would receive a lighter sentence for doing so but that the State had not yet offered her any sort of deal.

At the trial's conclusion, the jury found Callaway guilty on both counts of the accusation. Shortly thereafter, he timely filed a pro se motion for new trial. After appellate counsel was appointed to represent him, Callaway filed an extraordinary motion for new trial, claiming that he was entitled to a new trial because of newly discovered evidence.[4] He later filed an amended motion for new trial, asserting the same claim, which the trial court denied after a hearing. This appeal followed.

In his sole enumeration of error, Callaway contends that the trial

---

[4] Given that Callaway's so-called extraordinary motion for new trial based on newly discovered evidence was filed within the time allowed by law for entertaining a motion for a new trial and prior to the trial court ruling on the original motion, we treat the extraordinary motion as if it were merely an amendment to the original motion. See OCGA §§ 5-5-23; 5-5-40 (a) and (b). Thus, the trial court's denial of Callaway's motions was directly appealable. OCGA § 5-6-34 (a) (1).

court erred in denying his motion for new trial, arguing that newly discovered evidence pertaining to the State's witness, and his former co-defendant, Whitehead warranted the grant of a new trial. We disagree.

"[M]otions for new trial upon the ground of newly discovered evidence are addressed to the sound discretion of the trial judge, and a refusal to grant the motion will not be reversed unless that discretion is abused." (Punctuation omitted.) *Rivera v. State*.[5] In such cases, "[t]he trial court's determination is entitled to great consideration." (Punctuation omitted.) *Thompson v. State*.[6] Our Supreme Court has held that

> [i]t is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Punctuation omitted.) *Timberlake v. State*.[7] "Failure to show even one of these requirements is sufficient to deny a motion for new trial." *Rivera*, supra, 296 Ga. App. at 154 (2).

In his extraordinary and amended motions for new trial, Callaway claimed that newly discovered evidence provided by a former boyfriend of Whitehead (and also a friend of Callaway) warranted the grant of a new trial. At the hearing on Callaway's motions, the former boyfriend testified that, contrary to her testimony at trial, Whitehead told him that she had a deal with the State, in which she would be released from jail if she testified against Callaway.[8] The former boyfriend further testified that he had given Callaway the money that Callaway put into Whitehead's inmate account while she was incarcerated pre-trial and that Whitehead was aware of this when she testified that Callaway was the source. Additionally, he testified he was with Whitehead when she was arrested on drug

---

[5] *Rivera v. State*, 296 Ga. App. 152, 153 (2) (673 SE2d 642) (2009).

[6] *Thompson v. State*, 291 Ga. App. 355, 360 (4) (662 SE2d 135) (2008).

[7] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

[8] Later in the same hearing, Whitehead testified and maintained that the State had not offered her a deal at the time she testified against Callaway but that she did so with the hope that she would receive favorable treatment.

charges in another county and that in that case she had attempted to hide the drugs by kicking the bag that contained them underneath her vehicle.

Callaway contends that Whitehead's former boyfriend's testimony meets all of the requirements outlined in *Timberlake*, and therefore warrants the grant of a new trial. However, pretermitting whether the former boyfriend's testimony would be admissible at a new trial, Callaway's contention lacks merit because "even were we to assume the absolute truth of [the former boyfriend's testimony], this so-called newly discovered evidence does nothing more than to impeach the credibility of [Whitehead]." (Punctuation omitted.) *Caldwell v. State*.[9] "A new trial is not authorized where the only effect of the alleged newly discovered evidence would be to impeach the credibility of a witness. This is true even though the witness whose credibility would be impeached gave the only testimony on some vital point in the case." (Citation omitted.) *Weems v. State*.[10] See *Caldwell*, supra, 269 Ga. App. at 87.

Moreover, if we were to accept the former boyfriend's testimony that *he had given Callaway the money* that Callaway put into Whitehead's inmate account as true, Callaway would certainly have to have been aware of this fact at the time of his trial when Whitehead testified that Callaway was the source of the funds. Thus, the former boyfriend's testimony regarding the source of the money put into Whitehead's inmate account was "merely newly available, rather than newly discovered, evidence." *Rivera*, supra, 296 Ga. App. at 155 (2). See *Thompson*, supra, 291 Ga. App. at 360 (4). Accordingly, we discern no abuse of the trial court's discretion in denying Callaway's motion for new trial. See *Williamson v. State*;[11] *Rivera*, supra, 296 Ga. App. at 155 (2).

*Judgment affirmed. Barnes, P. J., and Bernes, J., concur.*

DECIDED JUNE 18, 2010.

*Mark A. Hinds*, for appellant.
*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney*, for appellee.

[9] *Caldwell v. State*, 269 Ga. App. 84, 87 (603 SE2d 506) (2004).
[10] *Weems v. State*, 268 Ga. 142, 143 (1) (485 SE2d 767) (1997).
[11] *Williamson v. State*, 300 Ga. App. 538, 546 (4) (c) (685 SE2d 784) (2009).