## A09A1144. SMITH v. THE STATE.
### (688 SE2d 636)

BERNES, Judge.

Following a jury trial, Donald Frank Smith was convicted of aggravated assault on a peace officer, obstruction of a law enforcement officer, possession of a firearm during commission of a felony, boarding a bus with a concealed weapon, and giving false information to a law enforcement officer. Smith appeals, claiming that the trial court erred (i) in failing to properly address the jury's stated confusion as to the elements of aggravated assault and (ii) in failing to correctly instruct the jury on the requirement that they find beyond a reasonable doubt that the handgun was used as a deadly weapon. Smith also contends (i) that he received ineffective assistance of counsel and (ii) that the evidence was insufficient to prove beyond a reasonable doubt that he concealed a weapon. For the reasons that follow, we disagree and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Jones v. State*, 289 Ga. App. 219 (656 SE2d 556) (2008). So viewed, the evidence shows that Nadia Boothe and her husband encountered a man, later identified as Smith, at an Atlanta gas station. Smith reached into Boothe's vehicle, tried to take a cigarette out of her hand, and then "grabbed on" her vagina. Boothe's husband drove away, but he decided to return and confront Smith.

After the car made a U-turn, Smith ran toward the vehicle with his hand on his hip, which Boothe described as "running like he had a gun." Boothe's husband made another U-turn and drove to a second gas station, where Boothe called the police. Smith appeared at that station as well, and "said something negative," but continued walking. Boothe and her husband waited 45 minutes for the police, who never arrived, before proceeding to the restaurant where Boothe worked.

Approximately two hours after Boothe reported to work, she saw Smith in the restaurant. She told her manager that he was the man who had attacked her earlier and then called 911. When the responding officer arrived he spoke with Boothe, who informed him that a man waiting at the bus stop had tried to grab her. About the same time as Boothe identified her assailant to the officer, Smith got on the bus. The officer ran after the bus on foot.

After the bus stopped, the officer boarded and began searching for the person Boothe had identified. He located Smith, told him to "come here," and the two got off the bus. The officer, who suffered a loss of memory as to portions of the incident, testified that "[t]he next thing I recall is . . . extreme pressure building up in my head. . . . [I]t felt like a volcanic eruption and the blood erupted out

of my head and completely covered me."

According to Boothe, Smith tried to run away after he and the officer exited the bus. The officer grabbed Smith by the back of the shirt and tried to handcuff him. Smith hit the officer with his hand, the officer responded by trying to strike Smith with his Asp baton, and the two began "tussling" and fell into the grass. Boothe saw Smith get on top of the officer and strike him numerous times in the face with a gun. The officer, who had blood running down his face, was eventually able to get to his knees and radio for help.

The bus driver testified that Smith tried to run when he stepped off the bus. The officer held Smith, who then swung at the officer. After the officer grabbed Smith around the waist, the two began to "tussle," and they went down to the ground and began fighting. The driver described the fight as the officer "trying to protect himself, and . . . to subdue" Smith. The driver did not see Smith with a weapon during the fight.

Police officers began arriving on the scene shortly after the first officer called for help. The first responding officer found Smith, handcuffed, lying on top of the injured officer. Both were covered in blood. The injured officer suffered multiple injuries to different parts of his face and head, including a free bleeding three- to four-inch cut on the top of his head, a broken nose, a cut lip, and blood in his mouth. Police also found a handgun on the ground, approximately five feet from where they took Smith into custody. When an officer asked Smith for his name, Smith claimed that he was "Larry Sims."

1. Smith contends that the trial court failed to accurately address the jury's stated confusion as to the elements it was required to find beyond a reasonable doubt in order to convict Smith of aggravated assault. We disagree.

The indictment charged that Smith committed the offense of aggravated assault on a peace officer by "repeatedly striking [the officer] in the head with a handgun, the same being a deadly weapon." During their deliberations, the jury sent a note to the trial court with the following question: "If we believe the harm caused the officer was by the asperton[1] [sic], would this still constitute aggravated assault (i.e., because it is also deemed to be a weapon)?"

In light of the note, defense counsel asked the trial court to bring the jury into the courtroom, tell them to refer to the indictment, and then read the assault charge from the indictment. The trial court recalled the jurors, acknowledged their note, and informed the jury that "all I can do is direct you back to the indictment" and that "[t]he indictment contains the charges in this case."

---

[1] This is apparently a reference to the "Asp baton" carried by the officer.

Smith argues that the trial court should have responded to the jury's inquiry with a direct answer, "no," and that the trial court's instructions did nothing to clarify the jury's confusion. However, the trial court responded to the note as defense counsel requested, the only difference being that instead of reading the indictment aloud to the jury, the trial court specifically directed the jury to the indictment with the instruction that the indictment contained the charges in the case.[2] Defense counsel did not object to this procedure. Smith cannot complain of induced error on appeal. See *Ingram v. State*, 160 Ga. App. 300, 301 (4) (287 SE2d 304) (1981) ("Since appellant requested the recharge and took no exception to it, he cannot now claim the recharge was error, as induced error is impermissible.") (citation omitted).

Furthermore, there was no error. As a rule, "when a jury makes explicit its difficulties[,] a trial judge should clear them away with concrete accuracy." (Punctuation and footnote omitted.) *Igidi v. State*, 251 Ga. App. 581, 587 (5) (554 SE2d 773) (2001). Further, "[w]hen the jury is confused and in doubt and requests further instructions on a particular point, it is the duty of the court to further instruct them." *Freeman v. State*, 142 Ga. App. 293, 294-295 (4) (235 SE2d 560) (1977). However, "[i]t is within the discretion of the trial court to give or not to give unrequested additional instructions when the jury requests a recharge on a particular point." *Igidi*, 251 Ga. App. at 586 (5).

Rather than simply do nothing, or refer the jury to the charges previously given, the trial court specifically directed the jury to the indictment. Compare *Freeman*, 142 Ga. App. at 294-295 (4) (when jury inquired about "guilt by association," which is not a crime, "[t]he court erred in merely instructing the jury to consider the evidence and the instructions previously given"). The indictment provided that Smith committed aggravated assault by striking the officer in the head with a handgun, and the trial court had previously instructed the jury that the burden of proof rested with the state to prove every material allegation of the indictment beyond a reasonable doubt. See *Bowles v. State*, 168 Ga. App. 763, 765 (4) (310 SE2d 250) (1983) (in response to the jury's question, the trial court did not err in not recharging on intent, reasonable doubt and the essential elements of the crime which were addressed in the initial charge). Accordingly, we find that the trial court did not abuse its discretion in responding to the jury's inquiry. See *Taylor v. State*, 169 Ga. App. 842, 844 (2) (315 SE2d 661) (1984) ("[T]he necessity, extent, and character of any supplemental instructions to the jury are matters

---

[2] The jury had a copy of the indictment.

within the sound discretion of the trial court.") (citations omitted).

2. Smith further contends that the trial court's charge improperly relieved the state from showing that the handgun used to assault the officer was a deadly weapon. Specifically, Smith complains that the trial court instructed the jury that "[a] firearm when used as such is a deadly weapon as a matter of law," notwithstanding that the evidence failed to show that Smith used the handgun as a firearm. See *Nejad v. State*, 296 Ga. App. 163, 169 (2) (674 SE2d 60) (2009) (where a weapon is not per se a deadly weapon, whether it became one as used is an issue for the jury); *Gober v. State*, 247 Ga. 652, 656 (4) (278 SE2d 386) (1981) (recognizing that whether a handgun is a deadly weapon when used "as a club" presents a jury question). The record shows, however, that when the trial court asked if there were any exceptions to the jury charge, defense counsel responded that her only exception was to the charge that referred to possession of a firearm by a convicted felon, and she did not reserve the right to assert additional objections at a later time. Accordingly, Smith waived the issue with respect to the aggravated assault charge. See *Geiger v. State*, 268 Ga. 8 (1) (485 SE2d 749) (1997); *Holden v. State*, 287 Ga. App. 472, 474-475 (2) (651 SE2d 552) (2007); *Aldridge v. State*, 237 Ga. App. 209, 215 (7) (515 SE2d 397) (1999). Nor does Smith demonstrate that the charge was a substantial error as a matter of law for purposes of OCGA § 5-5-24 (c).[3] See, e.g., *Morgan v. State*, 279 Ga. 6, 7 (2) (608 SE2d 619) (2005); *Nichols v. State*, 288 Ga. App. 118, 120 (1) (653 SE2d 300) (2007) ("Under this standard, a defendant must show that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial.") (citation, punctuation and footnote omitted).

3. Smith claims that he "was denied a fair trial when his trial counsel failed to comprehend and thus [present] the primary de-

---

[3] Pretermitting whether the jury charge was precisely conformed to the evidence presented, the trial court's charge viewed as a whole did not take the issue of whether the handgun was a deadly weapon from the jury's consideration. See *Leigner v. State*, 213 Ga. App. 871, 872 (3) (446 SE2d 770) (1994) ("The charge of the jury must be taken as a whole and each part thereof considered in connection with every other part of the charge.") (citations omitted). The trial court charged the jury that the state must prove as a material element of aggravated assault "that the assault was made with a deadly weapon." The trial court's other instruction on the definition of a deadly weapon also informed the jury that they could consider "the character of the weapon, . . . the nature of any wound or absence of wound, or other evidence of the capabilities of the instrument." See *Wells v. State*, 125 Ga. App. 579, 580 (188 SE2d 407) (1972) ("The lethal character of the weapon used in making an assault may be inferred from the effect and nature of the wound inflicted.") (citations and punctuation omitted); *Tanner v. State*, 86 Ga. App. 767 (2) (72 SE2d 549) (1952) (the fact that an instrument was likely to produce death may be shown from the "nature of the wound as well as by direct proof of the character of the weapon").

fenses available to him under the circumstances of the case." Specifically, Smith argues that his trial counsel was ineffective in that she (i) did not secure the testimony of two eyewitnesses, (ii) failed to request certain charges favorable to the defense, and (iii) conceded the lawfulness of his detention. "In order to succeed on this claim, appellant must show that his counsel's performance was professionally deficient and that[,] but for counsel's unprofessional conduct, there is a reasonable probability the outcome of the proceedings would have been different." *Varner v. State*, 285 Ga. 300, 301 (3) (676 SE2d 189) (2009). See *Strickland v. Washington*, 466 U. S. 668, 688, 695 (104 SC 2052, 80 LE2d 674) (1984).

(a) Defense counsel subpoenaed Moreno Simon and Alfonso Kennedy, witnesses to the altercation between Smith and the officer, because she anticipated that they would testify that they did not see a firearm in Smith's hands. Simon testified at the hearing on motion for new trial that he saw Smith tussling with the officer and that he did not see anything in Smith's hands. Smith also proffered at the hearing a transcript of Kennedy's prior sworn testimony that he witnessed the altercation between the officer and Smith, and that he saw nothing in Smith's hands.

Simon and Kennedy came to the courthouse during the trial, but defense counsel was unable to call either as a witness because she could not locate them when the trial resumed after lunch recess. After a short conference, the trial court indicated he would not wait for the witnesses, and the defense called the missing witnesses' grandmother, Diane Kennedy, as its first witness. After her testimony, the missing witnesses could still not be located. Smith then testified in his defense, after which the defense rested.

Smith claims that his trial counsel was deficient in failing to request a continuance to secure the missing witnesses' attendance at trial.[4] However, even assuming that defense counsel's performance was deficient in this respect, Smith cannot show a reasonable probability that the results of the trial would have differed had the missing witnesses testified. The bus driver and Diane Kennedy testified that they did not see a weapon in Smith's hands, and this was consistent with the missing witnesses' anticipated testimony as to Smith's lack of a gun. Further, Smith also testified in his defense and maintained that he did not have a gun. See *Potter v. State*, 273 Ga. 325, 327 (540 SE2d 184) (2001) (no prejudice to defendant in

---

[4] Smith suggests that his trial counsel could have offered a transcript of Alfonso Kennedy's previous testimony in federal court, but fails to show that a transcript was then available so as to avoid a continuance. His other suggestions as to his counsel's possible actions, such as making a proffer of the witnesses' testimony, appear appropriate in the context of the pursuit of a motion for continuance, and we will not address them separately.

trial counsel's failure to request a continuance because "appellant testified to the same fact that the missing witness would have"); *Lyons v. State*, 269 Ga. App. 27, 31 (3) (d) (602 SE2d 917) (2004) ("Trial counsel's failure to present cumulative evidence does not amount to ineffective assistance.").

(b) Smith further contends that his trial counsel was ineffective in failing to identify and pursue the primary defenses available to him, "justified force in resisting an unlawful arrest and resisting excessive force during an arrest" and was therefore ineffective in failing to pursue jury charges on "the [s]tate's burden to disprove an affirmative defense, the affirmative defense of unlawful arrest or excessive force during a lawful arrest." We disagree.

(i) Smith's counsel asked the trial court to instruct the jury that "one upon whom an illegal or unlawful arrest is being made has the right to resist the arrest with such force as is reasonably necessary to prevent the arrest." Accordingly, trial counsel was not ineffective for failing to request the charge. Furthermore, pretermitting whether the instruction was authorized by the evidence, the trial court gave the charge.

(ii) Since an affirmative defense contemplates that the defendant admit doing the act charged, and Smith testified that he did not resist or assault the officer, we cannot say that Smith's trial counsel was deficient in failing to request a specific charge on affirmative defense. See, e.g., *Lightning v. State*, 297 Ga. App. 54, 59 (5) (676 SE2d 780) (2009) (trial court properly instructed the jury that "[a]n affirmative defense is a defense that admits the doing of the act charged"). Further, the trial court instructed the jury that "[w]hen a defense is raised by the evidence, the burden is on the state to negate or disprove it beyond a reasonable doubt."

(iii) Defense counsel did not request that the trial court charge the jury that a person is authorized to resist a lawful arrest when excessive and unlawful force is used in effectuating the arrest. See *Long v. State*, 261 Ga. App. 478, 480 (1) (583 SE2d 158) (2003); *Cunningham v. State*, 221 Ga. App. 341, 342 (3) (471 SE2d 273) (1996). However, because Smith testified that he did not resist the officer's attempt to detain him, he was not prejudiced by his trial counsel's failure to request the charge. See, e.g., *Allen v. State*, 237 Ga. App. 744, 745 (3) (516 SE2d 788) (1999); *Love v. State*, 194 Ga. App. 601, 602 (2) (391 SE2d 447) (1990).

(c) Smith further contends that his trial counsel abandoned and thereby conceded to the state the issue of the lawfulness of his detention. Again, we disagree. In light of the trial court's instructions, the jury was required to consider the issue as part of the

elements of the offense.[5] See *Green v. State*, 240 Ga. App. 774, 775 (1) (525 SE2d 154) (1999) ("[t]he [s]tate was required to prove the lawfulness of the arrest in order to prove an essential element of the offense [of obstruction of a law enforcement officer]"). Trial counsel argued to the jury that the state was required to prove the case against her client beyond a reasonable doubt. She also contended that Smith "didn't do anything wrong, but yet, he was removed from the bus," after which the officer "took his asp baton and he started beating my client."

In view of the foregoing, Smith fails to show that he received ineffective assistance of trial counsel, and the trial court did not err in denying his motion for a new trial on this ground.

4. Lastly, Smith claims that the state failed to prove the offense of boarding a bus with a concealed weapon beyond a reasonable doubt. We disagree.

OCGA § 16-12-123 (b) provides, in applicable part: "Any person who boards or attempts to board [a] . . . bus . . . with any . . . firearm . . . concealed on or about his or her person or property which is or would be accessible to such person while on the . . . bus . . . shall be guilty of a felony." Smith contends that the state failed to prove the element of concealment. Although "concealed" is not specifically defined in the statute, the legislature has provided that for purposes of the offense of carrying a concealed weapon, the weapon is concealed unless carried "in an open manner and fully exposed to view." OCGA § 16-11-126 (a). "[T]he law forbidding the carrying of concealed weapons was designed to put those dealing with such persons on notice so that they could govern themselves accordingly." *Moody v. State*, 184 Ga. App. 768, 769 (1) (362 SE2d 499) (1987).

The evidence shows that an officer found a silver revolver approximately five feet away from where other officers were struggling to hold Smith down. The first officer recalled being hit by what "was possibly a metal object." Boothe testified that she saw Smith hit the officer in the face with a gun. In view of the foregoing, and in light of the evidence that the altercation between Smith and the officer began almost immediately after they exited the bus, the jury could conclude that Smith possessed the gun while he was on the bus. Further, according to the bus driver, he could not tell if Smith had a weapon when he got on the bus. The officer also did not see a

---

[5] The trial court charged the jury that a person commits the offense of obstruction of an officer when that person knowingly resists, obstructs, or opposes the officer "in the lawful discharge of official duties." The trial court also charged the jury that the state has the burden of proving every essential element of the crime charged beyond a reasonable doubt. The jury was further instructed with regard to an officer's right to detain an individual if there is a reasonable suspicion of criminal wrongdoing based on specific and articulable facts.

gun on Smith when Smith complied with the officer's request to approach. Given that two witnesses had an opportunity to observe Smith while he was on the bus and did not see the gun that Smith was carrying, the jury could conclude that Smith was not carrying the weapon in an open manner fully exposed to view. Accordingly, any rational trier of fact could have found beyond a reasonable doubt that Smith was guilty of the offense of boarding a bus with a concealed weapon. See, e.g., *Moody*, 184 Ga. App. at 769 (1) (location of gun did not put others on notice and was therefore not fully exposed within the statute governing concealed weapons).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 6, 2009 —
RECONSIDERATION DENIED DECEMBER 16, 2009 — ■

*Jimmonique R. S. Rodgers*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys*, for appellee.