**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 23, 2013**

# In the Court of Appeals of Georgia

A13A0770. BENJAMIN v. THE STATE.

BRANCH, Judge.

James Troy Benjamin was tried and convicted of rape and kidnapping with bodily injury and sentenced to two concurrent life sentences. Following the denial of his motion for new trial, Benjamin appeals, contending that trial counsel was ineffective and that the trial court failed to properly answer a question from the jury.

Construed in favor of the guilty verdict, the evidence presented at trial shows that at about 2:00 a.m. Saturday morning July 19, 2008, a man spoke to the 57 year-old-female-victim and then attacked her, choked her, dragged her behind a house located at 2405 Amsterdam Drive, and raped her. After the assault, the police were called, and the victim gave a detailed description of her assailant to the police that strongly corresponded to the description of Benjamin on his booking report.

Moreover, although she did not know the assailant's name, the victim told the first responding officer that she knew of her assailant and his brothers, and she pointed out where her assailant was staying in the neighborhood, which was 2370 Amsterdam Drive in Richmond County, a three or four minute walk from the site of the attack. On the night of the assault, the officer was unable to get anyone to respond at the identified address. The victim went to the emergency room before morning, and medical evidence supported the fact of rape. And a witness testified that he had seen both Benjamin and the victim that night and saw Benjamin walking toward the victim.

Three days after the assault, the victim told an investigator that her assailant's name was James Benjamin and that he could be found at the 2370 Amsterdam Drive address. The investigator drove the victim to the location where she identified Benjamin as her assailant from among several men who were sitting outside. The investigator dropped the victim off elsewhere, returned to the location, asked Benjamin to come with him, and took Benjamin in his patrol car to where the victim was waiting. There, while Benjamin was sitting in the patrol car, the victim again identified Benjamin as the assailant. Benjamin had some scrapes on his knees and a scratched cheek at the time. The investigation did not produce any DNA, fingerprint or other scientific evidence, however; and Benjamin willingly gave a sample of his

2

own DNA during the investigation. The victim also identified Benjamin at trial as the person who attacked and raped her.

Benjamin testified in his own defense and denied attacking and raping the victim. He also testified that his brother lives at 2370 Amsterdam Drive and that although he generally stayed at his brother's home on weekends, he slept at his mother's house on Friday night, July 18, 2008, and did not leave until 11:30 a.m. Saturday. He only went to his brother's house that Saturday night.

1. Benjamin contends his trial counsel was ineffective for failing to call his mother as an alibi witness. Under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), the appellant "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." (Citation omitted.) *White v. State*, 283 Ga. 566, 569 (4) (662 SE2d 131) (2008). On claims of ineffective assistance of counsel, we will uphold a trial court's findings of fact unless they are clearly erroneous but review legal conclusions de novo. *Hunter v. State*, 281 Ga. 526, 528 (2) (a) (640 SE2d 271) (2007); *Cherry v. State*, 283 Ga. App. 700 (1) (642 SE2d 369) (2007).

3

The relevant facts show that at the beginning of the trial, with the jury present, the court swore in all potential witnesses who happened to be present. Benjamin's mother, who was present, did not stand as a witness. A bench conference ensued, during which the State explained "it doesn't look like the defense is going to call the defendant's mother. . . . It's possible that I will call her because of a conversation I have had with her, so I would ask her to also be invoked (sic) and have to step outside too." The bench conference ended, and the court then addressed Benjamin's mother in the presence of the jury: "I think that you may be a witness in the case they've decided. I'm going to ask you to raise your right hand"; whereupon, she was given the oath for witnesses. Opening statements were not transcribed.

The State then presented its case in chief (but did not call Benjamin's mother), following which Benjamin chose to testify in his own defense. On direct, he testified that he spent Friday night July 18, 2008, at his mother's house, that he slept there, and that he did not leave until 11:30 Saturday morning. On cross examination, the State forced Benjamin to concede that his mother was present in the courthouse and available to testify. Following Benjamin's testimony, Benjamin's trial counsel did not call his mother (or anyone else) as a witness; rather, the defense rested. Although closing argument was not transcribed, during colloquy at trial, the State explained to

4

the court that during closing argument it argued that the defense had the power and ability to call material witnesses to testify.

The case was submitted to the jury, and, during the deliberations, the jury submitted a question to the court: "Why doesn't Benjamin's mother or any other witnesses give a statement to testify in his behalf?" In response, the trial court further instructed the jury that all the evidence had been presented and all the witnesses had testified. In response to the court asking for objections to the instruction, Benjamin's counsel then asked the court to re-instruct the jury on the burden of proof, specifically that the defendant does not have any burden to present any evidence. The court declined to do so. At the sentencing hearing that immediately followed the trial, Benjamin's mother spoke in support of her son and said, "Your Honor, I don't think my child did that because he was at my house; he couldn't have did it." Benjamin's mother did not testify at the hearing on the motion for new trial.

Remembering that there is a "strong presumption that counsel's performance fell within the broad range of professional conduct," *Griffin v. State*, 292 Ga. 321, 325 (6) (a) (737 SE2d 682) (2013), we hold that counsel's performance was not deficient and that even it was, Benjamin could show no harm.

(a) At the hearing on the motion for new trial, trial counsel testified that her theory of the case was misidentification, i.e., that Benjamin was not involved in the crime. Trial counsel admitted that when the trial court gave Benjamin's mother the oath at the beginning of trial it could have led the jurors to expect that she would be called as a witness. But trial counsel testified that although she could not remember it, she had a reason for not calling Benjamin's mother as a witness: "if I didn't feel that her testimony was significant to the facts of the case or to any of the issues . . . if she didn't have any information to provide with relation to an identification, I wouldn't have called her." Trial counsel added, "I just know that there was a reason that I didn't call her, but don't remember what that reason was. But I didn't call her for a reason."

Trial counsel's testimony is supported by the fact that the prosecutor told the court in a bench conference prior to opening statements that "it doesn't look like the defense is going to call the defendant's mother." In other words, defense counsel had already made a decision not to call the mother. Moreover, the prosecutor suggested that based on his own conversation with Benjamin's mother, there was a possibility that the State would call her as a part of its case in chief, suggesting that her testimony was favorable to the State. "[T]he determination of which witnesses to call . . . is a

strategic and tactical decision within the exclusive province of the attorney after consultation with the client. [Cit.]" *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003). Here, Benjamin has not overcome the strong presumption that counsel engaged in professional conduct.

(b) Even if counsel's performance were deficient, however, Benjamin has failed to show prejudice. To prove the prejudice prong of *Strickland* on a claim that trial counsel failed to call a witness, a defendant must show the witness's expected testimony by presenting either live testimony of the witness, an affidavit from the witness, or a "legally recognized substitute for the uncalled witness's testimony"; a proffer by counsel is insufficient. (Footnote omitted.) *Dickens v. State*, 280 Ga. 320, 322 (2) (627 SE2d 587) (2006). See also *Goodwin v. Cruz–Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995) (movant must "make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case"). Benjamin's mother did not testify at the hearing on the motion for new trial or submit an affidavit. Benjamin argues that his mother's statement at the sentencing hearing, which immediately followed the trial at which she was sworn in as a witness, constitutes a legally recognized substitute for his mother's testimony at the hearing on the motion for new trial.

7

Pretermitting this issue, however, we hold that Benjamin's mother's statement is insufficient to show that there is a reasonable probability that the trial result would have been different if she had testified at trial. Her statement contains no specific information such as the time Benjamin arrived at her house, whether she saw him during the night, whether he ever left the house, whether he had a vehicle at his disposal, whether she slept through the night, or where her house was in relation to the scene of the crime. Without such detail, Benjamin cannot show that his mother's statment was, in fact, relevant alibi testimony, i.e., that it showed the impossibility of Benjamin's presence at the scene of the crime, sufficient to require a new trial.

> The defense of alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission. The range of the evidence in respect to time and place must be such as reasonably to exclude the possibility of presence.

OCGA § 16-3-40. See also *Moore v. State*, 268 Ga. App. 398, 399 (6) (601 SE2d 854) (2004). "Counsel is not ineffective because he does not call additional witnesses whose vague testimony could not corroborate appellant's alibi." (Citation omitted.) *Palmer v. State*, 274 Ga. 796, 797-798 (5) (560 SE2d 11) (2002) (counsel not ineffective when uncalled alibi witness's testimony "could not exclude the possibility of appellant's presence at the crime scene when the murders occurred"). Because

8

Benjamin submitted no other evidence to show any alleged prejudice resulting from trial counsel's failure to call Benjamin's mother as a witness, we hold that Benjamin failed to meet the requirements of *Strickland v. Washington*. The trial court, therefore, did not err by denying the motion for new trial on this ground.

2. Benjamin also contends the trial court erred by failing to re-instruct the jury that Benjamin had no obligation to present evidence after the jury asked "Why doesn't Benjamin's mother or any other witnesses give a statement to testify in his behalf?" Alternatively, Benjamin contends that trial counsel was ineffective for failing to raise a contemporaneous objection to the trial court's response to the jury's question.

(a) We first find that, under the circumstances, trial counsel did not waive an objection. The court responded to the jury without offering an opportunity for the parties to object, following which the court asked the parties if they had any objection. Although defense counsel initially responded in the negative, she immediately thereafter raised an objection in which she asked the court to re-charge "the entire burden of proof issue" because the jury appeared to believe that the defendant had a burden to present evidence. It is clear that the trial court entertained the objection.

(b) When a jury does not ask for a recharge of one or more jury instructions but instead requests further explanation of the law or raises other questions "it [is] within

the trial court's sound discretion to determine the need, breadth, and formation of any additional jury instructions." (Citation omitted.) *Holloman v. State*, 291 Ga. 338, 344 (7) (729 SE2d 344) (2012). See also *Litmon v. State*, 186 Ga. App. 762, 763 (2) (368 SE2d 530) (1988) ("the necessity, extent, and character of any supplemental instructions to the jury are matters within the sound discretion of the trial court").

Here, after the jury asked why Benjamin's mother or other witnesses did not testify on his behalf, the trial court instructed the jury as follows:

> The lawyers have rested their case. All of the witnesses who are going to testify have testified. All of the evidence that . . . is to be presented has been presented. You will take the facts as you understand them to be and apply the law that I gave you in [the] charge and reach a verdict in this case.

We find no abuse of discretion. During the main charge, the trial court instructed the jury on the burden of proof:

> The burden of proof is upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt. There is no burden of proof upon the defendant whatever and the burden never shifts to the defendant to prove his innocence. When a defense is raised by the evidence, the burden is on the State to negate or disprove it beyond a reasonable doubt. . . . If the

10

State fails to prove the defendant's guilt beyond a reasonable doubt, it would be your duty to acquit the defendant.

The court also charged on alibi and charged that the State had the burden of proving beyond a reasonable doubt that the defendant was at the scene of the crime.

"[J]ury instructions must be read and considered as a whole in determining whether the charge contained error." (Citations and punctuation omitted.) *Sullivan v. Sullivan*, 273 Ga. 130, 132 (2) (539 SE2d 120) (2000). Here, the trial court thoroughly charged the jury on the burden of proof and alibi. Thus, the trial court properly charged the principle requested by Benjamin in his objection. The court's decision not to repeat the charge on burden of proof in response to the jury's question about witnesses is not an abuse of discretion. See, e.g., *Simon v. State*, __ Ga. App. __ (2) (Case No. A12A2041, decided March 28, 2013) (under the circumstances presented, trial court did not err by refusing to recharge on burden of proof for an insanity defense and by referring the jury to charge already given).

With regard to Benjamin's argument that a recharge on burden of proof was warranted because circumstances at trial might have led the jury to expect that Benjamin's mother would testify, we note that it is acceptable for the State and the

11

defense to comment on the failure of the other party to call witnesses who could have helped their case:

> [W]hen a criminal defendant testifies at trial about the existence of a witness with knowledge of relevant facts, and the witness does not testify, the prosecutor is entitled to comment in closing argument on the defendant's failure to produce the witness, and this does not improperly shift the burden of proof to the defendant.

(Citation omitted.) *Latty v. State*, 297 Ga. App. 233, 234 (2) (676 SE2d 882) (2009). See also *Spear v. State*, 270 Ga. 628, 630 (3) (513 SE2d 489) (1999) ("defense and prosecuting counsel are equally able to comment on the failure of the other to present certain witnesses as long as that argument is derived from evidence properly before the factfinder") (citation and punctuation omitted); *Morgan v. State*, 267 Ga. 203, 209 (4) (476 SE2d 747) (1996).

For the above reasons, we conclude that the trial court did not abuse its discretion when it responded to the jury's question.

*Judgment affirmed. Ellington, C. J., concurs. Phipps, P. J., concurs in Division 1 and in the judgment.*