**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 15, 2016**

# In the Court of Appeals of Georgia

A16A0075. HAYGOOD v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for disorderly conduct and misdemeanor obstruction of a law enforcement officer, Eric Haygood argues that the evidence does not support the verdict and that the trial court erred when it refused his request for a jury instruction as to a person's right to use proportionate force in resisting an arresting officer's use of excessive force. We find no error and affirm.[1]

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of

---

[1] Although Haygood has served all of his time, his appeal is not moot because a "defendant is entitled to an opportunity to attempt to show that his conviction was invalid." (Citations and punctuation omitted.) *Chaplin v. State*, 141 Ga. App. 788, 790 (1) (234 SE2d 330) (1977) (completing service of two months in custody for misdemeanor obstruction of an officer did not render appeal moot).

innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that at around 3:00 a.m. on December 17, 2009, Haygood's brother heard Haygood having a "loud conversation" in the bedroom Haygood shared with their elderly father, who suffered from the early stages of dementia. The brother asked Haygood and their father to quiet down so they would not wake up their mother and his teenaged daughter, who were sleeping in the other bedroom. The brother testified that Haygood "got agitated" with him and told him to leave the room and keep out of it. Haygood then went toward the kitchen, followed by their father and their mother, who was now out of bed complaining about the noise. Haygood's father told the brother to call the police.

The brother put on a coat and went outside to call 911. He told a dispatcher that Haygood was "high" and was arguing and waking up the whole house. He told the dispatcher that he told Haygood to quiet down and that Haygood then went in the

2

kitchen and got a knife. He also told the dispatcher that no one could go to sleep because they did not feel safe. Haygood and his father both came outside. The brother called 911 a second time and told the dispatcher that the police needed to hurry up and come out because Haygood was standing out in the street "with his hand up under his coat [as if] he had a gun," acting as if he was "fixing to sho[o]t [their] daddy out in the street right now."

Officer M. W. reached the residence first, at 4:00 a.m., followed closely by three other officers. Officer M. W. testified that he encountered Haygood's brother outside, and the brother told him that Haygood was threatening him and their father and that Haygood went into the kitchen and retrieved a knife and, with the knife in hand, began verbally assaulting their father.

After Officer M. W. spoke with Haygood's brother outside, he went into the house with Officer R. L. to speak with Haygood and assess the situation. Officers N. M. and A. R. arrived next. Officer M. W. and Officer R. L. testified that Haygood was in the hallway, and they asked to speak with him outside. Haygood first asked why, and they did not give him a reason but reiterated their request. Haygood then responded vehemently that he was not going anywhere and yelled that he was not going to jail. Officer M. W. testified that this response indicated that verbal

3

commands were not enough and the situation was "about to be physical." Officer R. L. testified that, because Haygood had been causing a confrontation in his parents' house and they wanted him removed, he had to leave the premises. Officer R. L. testified that, after Haygood said he was not going anywhere, the officers "decided to go hands-on with him." Officer M. W. testified that he grabbed Haygood, who yanked away and hit Officer R. L. near the shoulder with a closed fist; Officer N. M. also testified that Haygood hit Officer R. L. with a closed fist. Officer R. L testified somewhat differently that, when they grabbed Haygood, Haygood pulled his arm back and his elbow hit Officer R. L. in the chest.

As the struggle escalated, the officers and Haygood fell through the doorway, into the living room, and onto a coffee table; Haygood ended face-down on the floor with his hands underneath him. Officer N. M. put his knee against Haygood's back, pinning him to the ground. According to Officer M. W. and Officer R. L., they instructed Haygood to show his hands, but he failed to do so and continued to struggle and curse. As Haygood appeared to reach for a metal dumbbell under a nearby sofa, the officers struck Haygood with their batons. The officers then handcuffed Haygood and searched him; he was not armed.

4

1. Haygood first contends that there is no evidence to support his convictions for disorderly conduct and misdemeanor obstruction. We disagree.

(a) *Disorderly Conduct.* Under OCGA § 16-11-39 (a) (1), a person commits the offense of disorderly conduct when that person "[a]cts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health[.]" The State charged Haygood with "act[ing] in a violent and tumultuous manner towards [his brother and his father,] whereby said [persons] were placed in reasonable fear of said person[s'] life, limb, and health[,] by using threatening language while reaching under his coat as if he had a weapon[.]"

Although there was no first-person testimony regarding whether Haygood's conduct placed his father and brother in fear for their safety, we cannot say that there is *no* evidence that Haygood's conduct placed them in such fear, given the brother's statement to the 911 dispatcher that the home's residents felt unsafe, the fact that the father told the brother to call the police, the urgency of the brother's request for police assistance, and the other circumstances presented. Notwithstanding his later

recantation at trial,[2] the brother's recorded statements to the 911 dispatcher and his statement to the first responding officer (as testified to at trial by that officer) provided some evidence from which the jury could infer that Haygood acted in a "violent and tumultuous" manner by using threatening language toward them while holding a knife. It was for the jury to resolve any conflicts between the brother's out-of-court statements and his trial testimony. *Eschena v. State*, 203 Ga. App. 621, 622 (3) (417 SE2d 214) (1992). It was also for the jury to decide whether the father's and brother's fear was reasonable. See *Mayhew v. State*, 299 Ga. App. 313, 315-316 (1) (a) (682 SE2d 594) (2009) (evidence supported finding that the victim was placed in reasonable fear for her safety where the defendant followed her around a drug store, yelled in her face, pointed a finger at her, and called her several hateful epithets).

For all these reasons, the evidence supported Haygood's conviction for disorderly conduct.

(b) *Misdemeanor obstruction*. The obstruction statute, OCGA § 16-10-24, provides in relevant part:

---

[2] The brother testified at trial that he had only "assumed" that Haygood would get a knife when he went into the kitchen and that he never actually saw Haygood with a knife. He also denied making a statement that night that Haygood had a knife in hand and was verbally abusing their father.

(a) Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor.

(b) Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer . . . is guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

The indictment charged Haygood with felony obstruction of a law enforcement officer in that he "knowingly and willfully resist[ed], obstruct[ed] or oppos[ed] [R. L.], a law enforcement officer with the Atlanta Police Department, in the lawful discharge of said officer's official duties by doing violence to said person, by striking said officer[.]" The jury found Haygood guilty of the lesser included offense of misdemeanor obstruction.

Here, the evidence authorized the jury to find that, when Officer R. L. and the other responding officers first approached Haygood, they were lawfully investigating the domestic disturbance reported by Haygood's brother, that his conduct interfered with the performance of the officers' duties, and that by resisting them as they performed those duties, Haygood obstructed or hindered the officers. This evidence

was sufficient to sustain his conviction for misdemeanor obstruction. See *Dudley v. State*, 264 Ga. App. 845, 846 (1) (b) (592 SE2d 489) (2003) (defendant's striking of officer who was placing that defendant under arrest was sufficient to present a jury question on an obstruction charge).

2. Haygood contends that the trial court erred in refusing to give his requested jury instruction regarding a person's right to use proportionate force against an officer's excessive use of force. We disagree.

Where, as here, a party has timely objected to a trial court's decision as to a jury instruction, we review that decision de novo. *Johnson v. State*, 323 Ga. App. 65, 68 (2) (744 SE2d 921) (2013), citing *Collier v. State*, 288 Ga. 756, 761 (1) (a) (707 SE2d 102) (2011) (Nahmias, J., concurring specially) (review of an objected-to jury charge is de novo, whereas "plain error" review applies when no objection is lodged).

As we recently noted, the obstruction statute "was amended in 1986, see Ga. L. 1986, p. 484, such that the offense of misdemeanor obstruction under the new statute no longer contains the element[ ] of violence as does the offense of felony obstruction." *Hoglen v. State*, 336 Ga. App. 471, 475 (2), n. 3 (784 SE2d 832) (2016) (citation and punctuation omitted). The two elements of felony obstruction are thus (1) knowingly and wilfully offering or doing violence to an officer (2) in the lawful

8

discharge of that officer's duties, whereas the two elements of the lesser included offense of misdemeanor obstruction are (1) knowingly and willfully resisting, obstructing or opposing an officer (2) in the lawful discharge of that officer's duties. OCGA § 16-10-24 (a), (b); see also *Drew v. State*, 211 Ga. App. 688 (440 SE2d 82) (1994) (identifying misdemeanor obstruction as a "lesser included offense" of felony obstruction).

The record shows that Haygood requested the suggested pattern charge on a person's right to resist police's excessive force by the use of proportionate force, as follows:

> A police officer is authorized to use in making a lawful arrest only that degree of force that is reasonably necessary to accomplish the arrest. The mere fact that a lawful arrest is being made does not give the officer the right to use excessive force or an unlawful degree of force upon the person being arrested. A person being arrested, even though the arrest itself is lawful, has the right to resist the use of excessive and unlawful force by those making the arrest to the extent that the person reasonably believes that the degree of resistance used is necessary to defend against the officer's use of unlawful or excessive force. In resisting, the person being arrested would not be authorized to use force that is unlawful or

disproportionate to the amount of force necessary to prevent the unlawful force being used against the person.[3]

The trial court determined that "the requested jury charge on justification was not supported by the evidence at trial because Haygood failed to admit to the charged offenses." In its order denying Haygood's motion for new trial, the trial court repeated that the charge was not authorized because "Haygood failed to admit to" using force against the officers engaged in lawfully arresting him.

There is no dispute that the arrest at issue here was accompanied by probable cause and was therefore lawful. Haygood, who did not testify, never admitted to using *any* force against the officers. Haygood's mother testified that she heard him ask them, "What have I done? I'm not doing anything," and Haygood's brother testified that because Haygood's arms were pinned behind his back, it was "impossible" for Haygood to strike or kick any of the officers. In Haygood's closing argument, he also denied that he had done violence to any of the officers.

A defendant who does not admit that he resisted an arrest forcibly is not entitled to a charge on his alleged right to do so. *Ojemuyiwa v. State*, 285 Ga. App.

---

[3] See *Suggested Pattern Jury Instructions*, Vol. II: Criminal Cases, 3.16.40, (4th ed., 2007, updated July 2015), citing *Webb v. State*, 159 Ga. App. 403 (283 SE2d 636) (1981).

617, 620-621 (1) (647 SE2d 598) (2007) (because defendant charged with obstruction did not admit to acts of striking or kicking an officer, she was not entitled to a charge on her justified use of force); *Allen v. State*, 237 Ga. App. 744, 745 (3) (516 SE2d 788) (1999) (where a defendant did not claim that he resisted officers' attempts to arrest him, a charge as to "the right of a person to resist an illegal arrest" was "not authorized by the evidence") (citation and punctuation omitted). Because Haygood did not admit to using *any* force against the officers, he was not entitled to a charge on his allegedly justified use of reasonable force to resist his arrest, and the trial court did not err in refusing his request. *Ojemuyiwa*, 285 Ga. App. at 620 (1); *Allen*, 237 Ga. App. at 745 (3); see also *Smith v. State*, 301 Ga. App. 670, 675 (3) (b) (iii) (688 SE2d 636) (2009) (defendant was not prejudiced by counsel's failure to request a charge on resisting excessive force when defendant testified that he did not resist the arresting officer); *Love v. State*, 194 Ga. App. 601, 602 (2) (391 SE2d 447) (1990) (trial court's refusal to give a charge on resisting an unlawful arrest was not error

11

when defendants "did not admit commission of the alleged obstructionist acts but, rather, denied having committed those acts").[4]

For all these reasons, the trial court did not err when it denied Haygood's motion for new trial.

*Judgment affirmed. Doyle, C. J., Andrews, P. J., Dillard, Ray and Mercier, JJ., concur. Ellington, P. J., Phipps, P. J., and Peterson, J., concur in Division 1 and dissent in Division 2.*

---

[4] Citing *Long v. State*, 261 Ga. App. 478 (583 SE2d 158) (2003), the dissent asserts that because Haygood has challenged the sufficiency of the evidence as to his conviction for misdemeanor obstruction, he was entitled to receive his requested charge on the permissible use of force. This assertion confuses the question whether an arrest was lawful as supported by probable cause, which was conceded in the requested charge itself, with the question whether Haygood was entitled to raise the affirmative defense of the justified use of force in resisting police's excessive force. We also note that the defendant in *Long* had used force to resist his arrest, and there is nothing in the case to suggest that he presented evidence to the contrary. Id. at 478-479 (1).

A16A0075. HAYGOOD v. THE STATE.

ELLINGTON, Presiding Judge, dissenting in part.

I concur fully in Division 1. For the reasons explained below, I respectfully dissent as to Division 2.

I believe that according to binding precedent the jury instruction that Haygood requested, regarding a person's right to resist the use of excessive and unlawful force during the course of an arrest, concerns a challenge to the sufficiency of the evidence supporting an essential element of the offense of obstruction of an officer. The majority errs by instead categorizing the charge Haygood requested as concerning the affirmative defense of justification. This error led to the majority's finding no error in the trial court's determination that the requested jury charge "was not supported by the evidence at trial because Haygood failed to admit to the charged offenses." Because the theory of the requested charge about a person's right to resist arrest was supported by some evidence, I believe that the trial court erred and that Haygood's conviction for obstruction of an officer should be reversed.

Under Georgia law, when a person resists being arrested, whether the person is guilty of obstruction of a law enforcement officer involves consideration of two

threshold factors: whether the basis for the arrest was lawful and whether the arrest was carried out in a lawful manner. As we have explained:

> A person commits the offense of obstruction of a law enforcement officer when he "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." OCGA § 16-10-24 (a). A lawful arrest is within the lawful discharge of an officer's duties. In a lawful arrest based upon probable cause, an officer has the right to use that force reasonably necessary to effect the arrest, and the defendant does not have the right to resist the use of such reasonable force. If an arrest is unlawful, however, the defendant has the right to resist the unlawful arrest with all force reasonably necessary to prevent the arrest. But even in a lawful arrest, an officer may not use more force than is reasonably necessary under the circumstances. And when an officer uses excessive force, a defendant has the right to resist to the extent reasonably necessary. . . . When, as here, a charge of obstruction arises during the course of an arrest, the defendant may defend against the charge by arguing that he was justified in resisting because the arrest was without probable cause, or, in the alternative, because the force used against him was excessive. . . . [A]n argument that the arrest was unlawful does not state an affirmative defense to a charge of obstruction. Rather, that argument is an assertion that the state has failed to prove an essential element of the offense – a lawful arrest.

2

(Citation and punctuation omitted.) *Long v. State*, 261 Ga. App. 478, 479 (1) (583 SE2d 158) (2003).[1] In other words, when a charge of obstruction is based on a person's conduct of resisting an arrest, for the State to carry its burden of showing that the law enforcement officer was "in the lawful discharge of his official duties," the State must show that the arrest was based on probable cause *and* that it was carried out with a lawful degree of force. *Long v. State*, 261 Ga. App. at 479 (1).

These two factors pertinent to the lawfulness of an officer's conduct in making an arrest – the basis for the arrest and the degree of force used – are reflected in a pair of suggested pattern jury instructions based on longstanding precedent. One instruction provides that, when the arrest itself is unlawful (the officer lacks probable cause), the person may resist the arrest with the degree of force that is reasonably

---

[1] See also *Green v. State*, 240 Ga. App. 774, 775-776 (1) (525 SE2d 154) (1999) (Where the alleged acts of obstruction of an officer consisted of the defendant's attempts to resist arrest, and the defendant argued that the arrest was unlawful, the defendant was not asserting the affirmative defense of justification and admitting the essential elements of the crime of obstruction. Instead, the defendant was asserting that the State failed to prove an essential element of the offense, that is, that the officers were acting in the lawful discharge of their official duties by attempting to arrest her.).

3

necessary to prevent the arrest.[2] The other instruction provides that a person may resist an arresting officer's unlawful or excessive use of force with the degree of force reasonably necessary to defend against the officer's excessive use of force.[3]

Haygood's requested charge followed verbatim the second of these suggested pattern jury instructions and is a correct statement of the law.[4] As explained above and as Haygood's counsel argued during the charge conference, the requested instruction does not concern the legal affirmative defense of justification. The

---

[2] "One upon whom an illegal or unlawful arrest is being made has the right to resist the arrest with such force as is reasonably necessary to prevent the arrest." *Suggested Pattern Jury Instructions*, Vol. II: Criminal Cases, 3.16.41 (4th ed., 2007, updated July 2015), citing *Brooks v. State*, 206 Ga. App. 485 (425 SE2d 911) (1992); *Ronemous v. State*, 87 Ga. App. 588 (74 SE2d 676) (1953); and *Smith v. State*, 84 Ga. App. 79 (65 SE2d 709) (1951).

[3] See Slip Op. at 10, quoting *Suggested Pattern Jury Instructions*, Vol. II: Criminal Cases, 3.16.40 (4th ed., 2007, updated July 2015), citing *Webb v. State*, 159 Ga. App. 403 (283 SE2d 636) (1981).

[4] *Long v. State*, 261 Ga. App. at 479 (1); *Cunningham v. State*, 221 Ga. App. 341, 342 (3) (471 SE2d 273) (1996) (finding a charge substantively identical to the *Suggested Pattern Jury Instructions*, Vol. II: Criminal Cases, 3.16.40, to be legally accurate). See also *Mullis v. State*, 196 Ga. 569, 577-578 (4) (27 SE2d 91) (1943) ("Even though an officer may have a legal right to make an arrest, still he can use no more force than is reasonably necessary under the circumstances, and cannot use unnecessary violence disproportionate to the resistance offered.") (citation omitted); *Bennett v. State*, 169 Ga. App. 85, 86 (1) (311 SE2d 513) (1983) (accord).

majority's analysis contradicts the clearly stated rule that an argument that a person may resist an arresting officer's unlawful or excessive use of force goes to the essential elements of the offense of obstruction and does not equate to the affirmative defense of justification in that context.[5] And this must be so, given the unique features of the offense of obstruction. Under the majority's analysis, any defendant who wishes to assert a right to resist the unlawful use of force must first admit to *every* essential element of obstruction. It is a hollow defense indeed that requires an unqualified admission of guilt.

In summary, because Haygood sought to challenge the sufficiency of the evidence that the degree of force was lawful, which is an essential element of the offense of obstruction, I believe that we must hold that the trial court erred in finding

---

[5] The distinction between the affirmative defense of justification and the right to resist an unlawful arrest was recognized in one of the cases cited in the majority. See *Ojemuyiwa v. State*, 285 Ga. App. 617, 619-620 (1) (holding that, under the circumstances, the affirmative defense of justification was inapplicable), 624 (5) (b) (noting that the defendant raised the defense of justification, and that the defense was inapplicable, and declining to consider her argument that trial counsel should have also requested a jury charge on the law regarding the right to resist an unlawful arrest, because the issue was not raised in the court below and preserved for appellate review) (647 SE2d 598) (2007). See also *Webb v. State*, 159 Ga. App. 403 (283 SE2d 636) (1981).

5

that the requested charge was inapplicable solely on the basis that Haygood failed to admit to obstruction as charged. *Long v. State*, 261 Ga. App. at 479 (1).

In addition, I believe that the requested charge was supported by at least slight evidence.[6] The jury heard evidence, though disputed in part, that four officers rousted Haygood out of bed at 4:00 a.m., refused to answer his request for a reason for their actions, then immediately grabbed him to forcibly remove him from the house, and then proceeded to pin him to the ground and beat him to the point that he soiled himself. This evidence authorized the jury to find that Haygood reasonably believed that he had the right to resist the amount of force exerted by the officers, as being excessive under the circumstances.

According to the majority, Haygood was not entitled to the requested jury instruction because he did not admit to using any force against the officers. Slip op. at 11 (2). Although Haygood challenged the evidence that he committed felony

---

[6] "To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge. Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." (Citations omitted.) *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). "Appellate review of the jury charge is de novo." (Citation omitted.) *Jordan v. State*, 322 Ga. App. 252, 255 (4) (a) (744 SE2d 447) (2013).

6

obstruction as charged by doing violence to Officer R. L. by striking him,[7] he did not deny resisting arrest. There is ample evidence from which the jury could find that Haygood refused the officers' commands, including commands to "stop resisting arrest," and struggled with the officers and physically opposed being detained.[8] The cases cited by the majority in which the defendant testified that he or she did not resist arrest, affirmatively rejecting any argument based on the right to resist arrest, are inapposite.[9] The burden of proof, of course, remains always with the State.[10]

---

[7] Count 1 of the indictment charged Haygood with "knowingly and willfully resist[ing], obstruct[ing] or oppos[ing] [R. L.], a law enforcement officer with the Atlanta Police Department, in the lawful discharge of said officer's official duties by doing violence to said person, by striking said officer."

[8] See *Long v. State*, 261 Ga. App. at 479 (1) (where the evidence showed that the defendant disobeyed an officer's commands, shouted obscenities, wriggled to get away, and fled, the trial court correctly charged the jury regarding the right to resist an arrest not based on probable cause and to resist an arrest carried out using excessive force).

[9] *Smith v. State*, 301 Ga. App. 670, 675 (3) (b) (iii) (688 SE2d 636) (2009) (the defendant testified that he did not strike the officer as charged and that he did not resist arrest); *Ojemuyiwa v. State*, 285 Ga. App. at 619-620 (1) (the defendant testified that she did not strike and kick the officer as alleged and that she did not otherwise resist arrest); *Allen v. State*, 237 Ga. App. 744, 745 (3) (516 SE2d 788) (1999) (the defendant testified that he did not kick or hit the officers and denied resisting arrest); *Love v. State*, 194 Ga. App. 601, 602 (2) (391 SE2d 447) (1990) (the defendants testified that they did not commit any of the alleged obstructionist acts).

[10] *Benjamin v. State*, 322 Ga. App. 8, 13 (2) (b) (743 SE2d 566) (2013).

Contrary to the State's assertion, it is not manifest that Haygood's case as a whole was fairly presented to the jury simply because the trial court charged the jury regarding the State's burden to prove every essential element of the crimes charged, including the element of intent. The jury instructions did not touch on the issues of the degree of force that an officer may use to effect an arrest or the circumstances under which an arrestee has the right to resist the use of force. For all the foregoing reasons, the trial court abused its discretion in refusing to give the requested charge, and I respectfully dissent to Division 2.[11]

I am authorized to state that Presiding Judge Phipps and Judge Peterson join in this dissent.

---

[11] *Chase v. State*, 277 Ga. 636, 640 (2) (592 SE2d 656) (2004) (reversal required where jury instructions failed to provide the jury with the proper guidelines for determining guilt or innocence of the charged offense); *Carroll v. State*, 293 Ga. App. 721, 723 (1) (667 SE2d 708) (2008) (it is essential that the court's instructions provide the jury with an understanding of the essential elements of the crimes charged in order to determine whether the State has met its burden of proof beyond a reasonable doubt; reversal required where the trial court did not instruct the jury on substantive points or issues involved in the case).